IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INN WORLDWIDE, INC., WYNDHAM HOTEL GROUP, LLC, and WYNDHAM HOTELS & RESORTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>4200 ROSE HOSPITALITY LLC, INDRA PATEL, and JYOTI PATEL,<br><br>Defendants. | Civil No. 2:22-cv-04822-BRM-CLW |

**STATEMENT OF MATERIAL FACTS OF DEFENDANTS, 4200 ROSE HOSPITALITY, INDRA PATEL, AND JYOTI PATEL**

Defendants, 4200 Rose Hospitality LLC ("4200 Rose Hospitality"), Indra Patel ("Mr. Patel"), and Jyoti Patel ("Ms. Patel") (collectively, "Defendants"), by and through their undersigned counsel, provide the following statement of material facts, as to which there exists a genuine issue to be tried, responding to the numbered paragraphs set forth in Plaintiffs' Statement:

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Disputed as stated. By way of further response, 4200 Rose Hospitality no longer operates the Days Inn Facility located at 4200 Roosevelt Boulevard, Philadelphia, PA.

6. Disputed. Mr. Patel and Ms. Patel were the sole members of 4200 Rose Hospitality, with Mr. Patel as the managing member.

7. Undisputed.

8. Disputed as to the conclusions of law. By way of further response, this averment refers to a written document that speaks for itself. Any characterizations or representations thereof are disputed.

9. Disputed as to the conclusions of law. By way of further response, this averment refers to a written document that speaks for itself. Any characterizations or representations thereof are disputed.

10. Disputed as to the conclusions of law. By way of further response, this averment refers to a written document that speaks for itself. Any characterizations or representations thereof are disputed.

11. Disputed as to the conclusions of law. By way of further response, this averment refers to written documents that speak for themselves. Any characterizations or representations thereof are disputed.

12. Disputed. By way of further response, this averment refers to a written document that speaks for itself. To the extent the written document referenced is accurately quoted and/or referenced, this averment is undisputed. However, to the extent the written document is inaccurately quote or misrepresented, the averment is disputed. Notably, Plaintiffs drafted the License Agreement and was "presented, negotiated, and executed by the Franchise Administration department, including Glenn Bisbing, Relicensing Sales Director, and Victoria Savino, Relicensing Coordinator." See Plaintiffs' Responses to Interrogatories, Response No. 8, attached as **Exhibit A**. Further, section 8.2 of the License Agreement provides that "[y]ou will reimburse the Indemnitee for all costs of defending the matter, including **reasonable attorneys' fees**. . . ." See Exhibit 1, Section 8.2 to Plaintiffs' Motion for Partial Summary Judgment

(**emphasis added**). *Nowhere* in the agreement is "reasonable attorneys' fees" defined. Id.; see also Exhibit 1, Appendix A to Plaintiffs' Motion for Partial Summary Judgment. It is disputed that the License Agreement and the Guaranty are enforceable against Defendants, as the License Agreement is ambiguous and vague as to "reasonable attorneys' fees," and Defendants asserted these Affirmative Defenses in their Answer. See Answer to Amended Complaint (Dkt. 40). Further, there is no evidence of record that Plaintiffs defined, valued, or explained what "reasonable attorneys' fees" would be to Mr. and Mrs. Patel at any time before, during, or after the execution of the License Agreement, nor is there any evidence of record that Defendants agreed to pay *all* fees claimed by Plaintiffs' counsel in the defense of the Underlying Actions or considered them "reasonable" as heretofore undefined. Moreover, there is no evidence that Plaintiffs communicated to Defendants *at any time* that they would be using DLA Piper, at the rates charged and billed to Plaintiffs, to defend themselves in any anticipated actions and/or the Underlying Actions, or communicated to Defendants *at any time* DLA Piper's rates, or the fee agreement between Plaintiffs and Liberty Mutual, whereby Liberty Mutual only agreed to pay a certain amount of fees charged by DLA Piper and that Plaintiffs would cover the "delta" above and beyond what Liberty Mutual agreed.

      13.    Disputed. By way of further response, this averment refers to a written document that speaks for itself. To the extent the written document referenced is accurately quoted and/or referenced, this averment is undisputed. However, to the extent the written document is inaccurately quote or misrepresented, the averment is disputed.

      14.    Disputed. By way of further response, this averment refers to a written document that speaks for itself. To the extent the written document referenced is accurately quoted and/or referenced, this averment is undisputed. However, to the extent the written document is

inaccurately quote or misrepresented, the averment is disputed. Further, section 8.2 of the License Agreement provides that the "non-prevailing party will pay all costs and expenses, including **reasonable attorneys' fees**, incurred by the prevailing party to enforce this Agreement . . . ." See Exhibit 1, Section 17.4 to Plaintiffs' Motion for Partial Summary Judgment (**emphasis added**). Again, *nowhere* in the agreement is "reasonable attorneys' fees" defined. Id.; see also Exhibit 1, Appendix A to Plaintiffs' Motion for Partial Summary Judgment. It is disputed that the License Agreement is enforceable against Defendants as the License Agreement is ambiguous and vague as to "reasonable attorneys' fees," and Defendants asserted such affirmative defenses in their Answer. See Answer to Amended Complaint (Dkt. 40). Further, there is no evidence of record that Plaintiffs defined, valued, or explained what "reasonable attorneys' fees" would be to Mr. and Mrs. Patel at any time before, during, or after the execution of the License Agreement, nor is there any evidence of record that Defendants agreed to pay *all* fees claimed by Plaintiffs' counsel in the defense of the Underlying Actions or considered them "reasonable" as heretofore undefined. Moreover, there is no evidence that Plaintiffs communicated to Defendants *at any time* that they would be using DLA Piper, at the rates charged and billed to Plaintiffs, to defend themselves in any anticipated actions and/or the Underlying Actions, or communicated to Defendants *at any time* DLA Piper's rates, or the fee agreement between Plaintiffs and Liberty Mutual, whereby Liberty Mutual only agreed to pay a certain amount of fees charged by DLA Piper and that Plaintiffs would cover the "delta" above and beyond what Liberty Mutual agreed.

    15.    Undisputed.

    16.    Undisputed.

    17.    Undisputed.

18. Disputed. By way of further response, this averment refers to a written document that speaks for itself, and Defendants dispute any characterizations or representations thereof.

19. Disputed. By way of further response, this averment refers to a written document that speaks for itself, and Defendants dispute any characterizations or representations thereof.

20. Undisputed.

21. Undisputed.

22. Disputed as a conclusion of law. By way of further response, this averment refers to a written document that speaks for itself. Any characterizations or representations thereof are disputed.

23. Disputed as a conclusion of law. By way of further response, this averment refers to a written document that speaks for itself. Any characterizations or representations thereof are disputed.

24. Disputed as a conclusion of law. By way of further response, this averment refers to a written document that speaks for itself. Any characterizations or representations thereof are disputed. Further, Plaintiffs' own Exhibit 23 only reflects correspondence from Plaintiffs to Mr. Patel.

25. Disputed as stated. Marcus Banks, corporate designee for Plaintiffs, testified that he made the recommendation to their carrier, Liberty Mutual, to retain the law firm, DLA Piper, to represent Plaintiffs in the defense of the Underlying Actions, even though DLA Piper's rates were significantly higher than what Liberty Mutual Agreed to pay. See Deposition transcript of Marcus Banks, attached as **Exhibit B** at PP. 50:12-20; 53: 8-17; 173:17 – 174:5; and 234:8-23. As a result, Liberty Mutual agreed to pay the following restricted rates to DLA Piper directly, as outlined below:

> For National Coordinating Counsel (NCC) assigned to DLA Piper, Liberty Mutual (LM) agrees to pay the following rates to the firm directly:
>     50% of the hourly rate up to a maximum* of:
>         Partner $370
>         Of Counsel $300
>         Sr. Associate $300
>         Jr. Associate $280
>         Paralegal $120
>     * for example, if the billed partner rate is $800/hour LM will pay $370. If the billed senior associate rate is $650/hour LM will pay $300. If the billed senior associate rate is $500, Liberty and Wyndham will each pay $250.
> Please identify any additional billing levels that DLA Piper has proposed.
>
> For all local counsel, nationwide, LM agrees to pay the following rates to the firm directly:
>     Partner $185
>     Associate $165
>     Paralegal $95
>
> Thus far, local counsel has been identified as follows:
>
>     OH: Redacted
>
>     PA: Plaintiffs BH and CA - DLA Piper
>
>     TX: Redacted
>
> For NCC and local counsel, Wyndham agrees to pay the delta of hourly rate above and beyond what LM has agreed to above. For instance, if Wyndham has agreed to pay Redacted a partner rate of $600/hour then LM will pay $185 and Wyndham will pay $415. Each firm will bill LM electronically through Lexis Nexis' CounselLink platform at the rates LM agrees to above. By agreement, billing by all firms, both local and NCC, will be subject to LM's Guidelines for Law Firms (attached and amended on an as needed basis with direct communication between the assigned adjuster and counsel). The law firms will bill Wyndham separately for the delta in rate.

See Email, dated May 9, 2019, Bates stamped DIW_4200Rose4193-4195, attached as **Exhibit C.** Per the fee agreement, Plaintiffs agreed to pay the "delta," or hourly rate, above and beyond what Liberty Mutual agreed to above for its attorneys' fees and costs, in their defense of the Underlying Actions. Id. None of this was ever communicated to Defendants at any time, including before or after any alleged "notice" of any "indemnification obligations" as alleged, which remain disputed.

26.     Undisputed.

27.     Undisputed as to resolution of the Underlying Actions in early 2023. By way of further response, Plaintiffs did not contribute one dollar towards any of the settlements, which was borne in their entirety by Defendants and related entities.

28. Disputed. By way of further response, this averment refers to written documents that speaks for itself. Any characterizations or representations thereof are denied.

        Respectfully submitted,

        By: _/s/ Conrad James Benedetto_
        **McCORMICK & PRIORE, P.C.**
        Philip D. Priore, Esquire
        NJ I.D. No. 002261997
        Conrad James Benedetto, Esquire
        NJ I.D. No. 0007342011
        Susan Keesler, Esquire
        NJ I.D. No. 010382012
        2001 Market Street, Suite 3810
        Philadelphia, PA 19103
        (T) 215-972-0161
        (F) 215-972-5580
        email: ppriore@mccormickpriore.com
                 cbenedetto@mccormickpriore.com
                 skeesler@mccormickpriore.com
        *Attorneys for Defendants*
        *4200 Rose Hospitality LLC, Indra Patel*
        *and Jyoti Patel*

Date: February 4, 2025