IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., WYNDHAM HOTEL GROUP, LLC, and WYNDHAM HOTELS & RESORTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>4200 ROSE HOSPITALITY LLC, INDRA PATEL, and JYOTI PATEL,<br><br>Defendants. | Civil Action No.: 2:22-cv-04822-BRM-CLW<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT**<br><br>*Document Electronically Filed* |

Pursuant to Local Civil Rule 56.1, Plaintiffs Days Inns Worldwide, Inc. ("DIW"), Wyndham Hotel Group, LLC ("WHG"), and Wyndham Hotels & Resorts, Inc. ("WHR" and, collectively, the "Wyndham Plaintiffs") submit this response to Defendants' 4200 Rose Hospitality LLC, Indra Patel, and Jyoti Patel (collectively, "Defendants"), Statement of Facts Not in Dispute (ECF No. 64-3, "Defs. SMF").

**Paragraph 1**: This Declaratory Judgment action involves claims by Plaintiffs, Days Inn Worldwide, Inc., Wyndham Hotel Group, LLC, and Wyndham Hotels & Resorts, Inc. (the "Wyndham Plaintiffs") for contractual and common law indemnification against Defendants (the "Indemnity Action"). *See* Amended Complaint, Dkt. 6.

**Response:** Undisputed, but incomplete. The action also includes a claim for breach of a Guaranty against Defendants Indra Patel and Jyoti Patel. ECF No. 6 ¶¶ 25-27.

**Paragraph 2**: On or about August 5, 2022, the Wyndham Plaintiffs filed their Amended Complaint, alleging that Defendants breached their obligations pursuant to the License Agreement entered into on April 23, 2008, between 4200 Rose Hospitality and Days Inn Worldwide, Inc. (the

"License Agreement"), and that Mr. and Mrs. Patel breached the Guaranty which was part of the License Agreement and which Mr. and Mrs. Patel entered into with Days Inns Worldwide, Inc. (the "Guaranty"), by failing to indemnify and hold harmless the Wyndham Plaintiffs, named defendants along with other related entities, from losses and expenses, in excess of $2 million, incurred in their defense of nine (9) actions filed in the Philadelphia Court of Common Pleas (the "Underlying Actions"). *Id.* at ¶¶ 9, 15, 18, 19, 22, 27.

**Response:** Undisputed that the Wyndham Plaintiffs filed the Amended Complaint that includes the referenced paragraphs.

**Paragraph 3**: The License Agreement was drafted by the Wyndham Plaintiffs. The Wyndham Plaintiffs state that the License Agreement was "presented, negotiated, and executed by the Franchise Administration department, including Glenn Bisbing, Relicensing Sales Director, and Victoria Savino, Relicensing Coordinator." *See* Wyndham Plaintiffs' Responses to Interrogatories, Response No. 8, attached as **Exhibit A**.

**Response:** Disputed. The License Agreement includes negotiated terms requested by 4200 Rose Hospitality LLC. In addition, disputed that Exhibit A to Defendants' SMF (ECF No. 64-4) supports the facts set forth in Paragraph 3. Exhibit A contains Defendants' responses to Plaintiffs' interrogatories, not Plaintiffs' responses to Defendants' interrogatories. The Wyndham Plaintiffs' response to Defendants' Interrogatory 8, attached as Pls. Ex. 4 to the Wyndham Plaintiffs' response, is accurately quoted.

**Paragraph 4**: 8.1 of the License Agreement states the following:

*See* License Agreement, dated April 23, 2008, attached as **Exhibit B**.

> 8.1 Independent of your obligation to procure and maintain insurance, you will indemnify, defend and hold the Indemnitees harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by any Indemnitee for any investigation, claim, action, suit, demand, administrative or alternative dispute resolution proceeding, relating to or arising out of any transaction, occurrence or service at, or involving the operation of, the Facility, any payment you make or fail to make to us, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, you, any party associated or affiliated with you or any of the owners, officers, directors, employees, agents or contractors of you or your affiliates, including when you are alleged or held to be the actual, apparent or ostensible agent of the Indemnitee, or the active or passive negligence of any Indemnitee is alleged or proven. You have no obligation to indemnify an Indemnitee for damages to compensate for property damage or personal injury if a court of competent jurisdiction makes a final decision not subject to further appeal that the Indemnitee engaged in willful misconduct or intentionally caused such property damage or bodily injury. This exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by the Indemnitee to protect persons or property.

**Response:** Undisputed.

**Paragraph 5**: 8.2 of the License Agreement states as follows:

> 8.2 You will respond promptly to any matter described in the preceding paragraph, and defend the Indemnitee. You will reimburse the Indemnitee for all costs of defending the matter, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest. We must approve any resolution or course of action in a matter that could directly or indirectly have any adverse effect on us or the Chain, or could serve as a precedent for other matters.

*Id.*

**Response**: Undisputed.

**Paragraph 6**: The plaintiffs in the Underlying Actions alleged that they were victims of sex trafficking that occurred at a hotel located at 4200 Roosevelt Boulevard, Philadelphia, PA (the "Days Inn Facility"), owned by 4200 Rose Hospitality, in approximately 2008 – 2013. Those plaintiffs in the Underlying Actions brought suit against the Wyndham Plaintiffs (and related entities) and 4200 Rose Hospitality (among other entities and hotels) in their actions. *Id.* at ¶ 15.

**Response**: Disputed. Exhibit B to Defendants' SMF (ECF No. 64-5), which is the License Agreement, supports the facts set forth in Paragraph 6. The Wyndham Plaintiffs further state that the plaintiffs in the Underlying Actions each alleged they were victims of sex trafficking that occurred at the Days Inn Faciality located at 4200 Roosevelt Boulevard, Philadelphia, PA 19124. ECF No. 6 ¶¶ 9, 15.

**Paragraph 7**: In approximately January 2023, 4200 Rose Hospitality and their insurer settled the below eight (of the nine) Underlying Actions for $24,000,000:

(i) *C.A. v. Roosevelt Inn, LLC et al.,* No. 190303355;

(ii) *B.H. v. Roosevelt Inn LLC et al.*, No. 190303356;

(iii) *K.R. v. Roosevelt Inn LLC et al.*, No. 191100552;

(iv) *T.E. v. 4200 Roosevelt LLC et al.,* No. 200900994;

(v) *V.S. v. 4200 Roosevelt LLC et al.,* No. 200900997;

(vi) *K.C. v. 4200 Roosevelt LLC et al.,* No. 210101926;

(vii) *D.P. v. Catholic Social Services et al.,* No. 220401713;

(viii) *L.E. v. 4200 Roosevelt LLC et al.*, No. 220500957;

**Response:** Undisputed that settlements were reached in the eight cases listed in Paragraph 7, and the terms of those settlements provide that 4200 Rose Hospitality LLC and their insurer funded the settlements for the collective amount of $24 million and that the plaintiffs in those cases released 4200 Rose Hospitality LLC and the Wyndham Plaintiffs, among other parties, from all liability for their alleged trafficking in those settlements. *See* Plaintiff's Statement of Undisputed Material Facts (ECF No. 65-2, "Pls. SMF"), Exs. 24 and 25 (redacted releases).

**Paragraph 8**: The Wyndham Plaintiffs did not contribute any amount whatsoever to the settlement of these eight Underlying Actions (the "Eight Underlying Actions").

4

**Response:** Undisputed that the Wyndham Plaintiff did not fund the settlement payments in the "eight Underlying Actions," assuming this paragraph refers to those listed in Paragraph 7.

**Paragraph 9**: The *A.H. v. Roosevelt Inn, LLC, et al.*, No. 200102954 (Pa. C.C.P. – Phila. Cnty.). underlying action (the "A.H. Underlying Action") was resolved in 2024, as it pertains to 4200 Rose Hospitality. Additionally, the indemnity action, as it pertains to the A.H. Underlying Action, specifically, has also been resolved, as it relates to fees and costs incurred by the Wyndham Plaintiffs to defend the portion of the A.H. Underlying Action.

**Response:** Disputed as incomplete. The A.H. Underlying Action involved the alleged trafficking of the plaintiff in that matter as to hotel properties, the Days Inn Facility and a Ramada ("Ramada Facility") located on Roosevelt Blvd. in Philadelphia. The A.H. Underlying Action has been settled as to the claims arising from the Days Inn Facility but remains pending as to claims arising from the Ramada Facility. The portion of the indemnity action that sought reimbursement for the defense of the claims in the A.H. Underlying Action arising from the Days Inn Facility has also been resolved. The fees and costs for defending the claims in the A.H. Underlying Action arising from the Ramada Facility are not at issue in the indemnity action.

**Paragraph 10**: Therefore, the Wyndham Plaintiffs seek indemnification and reimbursement of their attorneys' fees and costs allegedly owed by Defendants pursuant to the License Agreement and Guaranty for the Eight Underlying Actions in this Indemnity Action. *Id.* at ¶ 18.

**Response:** Disputed as incomplete. Assuming Paragraph 10 refers to this action, the Wyndham Plaintiffs are seeking indemnification for the fees and costs incurred to defend the eight Underlying Actions listed in Paragraph 7 and for the fees and costs of bringing the present indemnity matter. Pls. SMF ¶ 15. *See also* ECF No. 6 ¶ 15.

**Paragraph 11**: On August 4, 2023, Defendants filed their Answer with Affirmative Defenses. *See* Answer of Defendants, Dkt. 40.

**Response**: Undisputed.

**Paragraph 12**: Defendants demand a trial by a jury of their peers. *Id.*

**Response**: Undisputed that Defendants included a jury demand in their answer, but the Wyndham Plaintiffs dispute that Defendants are entitled to a trial by jury on any of the claims against them. Section 17.6.4 of the License Agreement provides that "THE PARTIES WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION RELATED TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE LICENSOR [*i.e.*, DIW], THE LICENSEE [*i.e.*, 4200 Rose Hospitality LLC], ANY GUARANTOR [*i.e.*, Indra and Jyoti Patel], AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS." ECF No. 65-3.

**Paragraph 13**: Based on their Supplemental Rule 26 Disclosures, dated January 11, 2024, the Wyndham Plaintiffs claim total fees and costs in the amount of $5,286,547.84, $225,028.86 of which was billed to the AH Underlying Action. *See* Supplemental Disclosures, attached as **Exhibit C**.

**Response**: Disputed as incomplete. Undisputed that the figures quoted appear in the Wyndham Plaintiffs' January 11, 2024 Supplemental Rule 26 Disclosures. But the Wyndham Plaintiffs have continued to incur costs, enforcing its rights under the License Agreement, and the final owed amount should be determined at a later proceeding.

**Paragraph 14**: Therefore, based on their Supplemental Disclosures, the damages that the Wyndham Plaintiffs seek here, as it relates to the Eight Underlying Actions, is $5,061,519.19.

**Response**: Disputed. The Wyndham Plaintiffs are seeking attorneys' fees and costs incurred in defending the Eight Underlying Actions. In addition, the Wyndham Plaintiffs are seeking pre-

judgment interest on this amount at the rate of 18% as provided in the License Agreement and attorneys' fees and costs related to their efforts to enforce their indemnity rights under the License Agreement and Guaranty. *See* ECF No. 65-1 at 8-9.

**Paragraph 15**: Based on their Supplemental Disclosures, the Wyndham Plaintiffs additionally claim $175,926.30 in fees and costs in prosecuting the instant Indemnity Action.

**Response**: Undisputed that the Wyndham Plaintiffs are seeking attorneys' fees and costs related to their efforts to enforce their indemnity rights under the License Agreement and Guaranty and that the Wyndham Plaintiffs had incurred $175,926.30 as of the date of their Supplemental Disclosures. Additional fees and costs have accrued and will continue to accrue. *See* Defs. SMF Ex. C (the Wyndham Plaintiffs' Supplemental Disclosures were made on January 11, 2024).

**Paragraph 16**: On January 4, 2024, Defendants took the deposition of Marcus Banks, corporate designee for the Wyndham Plaintiffs. *See* Deposition transcript of Marcus Banks, attached as **Exhibit D**.

**Response**: Undisputed.

**Paragraph 17**: Mr. Banks testified that he is the "lawyer for [Wyndham Hotels & Resorts, Inc.]." *Id.* at 20:7 – 21:10.

**Response**: Undisputed.

**Paragraph 18**: Mr. Banks testified that he made the recommendation to the Wyndham Plaintiffs' insurance carrier, Liberty Mutual, to retain the law firm, DLA Piper, to represent the Wyndham Plaintiffs in the defense of the Underlying Actions, even though DLA Piper's rates were significantly higher than what Liberty Mutual Agreed to pay. *Id.* at 50:12-20; 53:8-17; 173:17 – 174:5; and 234:8-23.

**Response**: Disputed. Paragraph 18 mischaracterizes Mr. Banks' testimony and is immaterial to the Wyndham Plaintiffs' claims. The purported summary of a portion of the testimony derives not from Mr. Banks, but from opposing counsel. *See* Defs. SMF Ex. D at 234:8-23 ("Q: DLA Piper is a firm that rates exceeded what, for example, what Liberty Mutual would agreed [sic] to pay." to which Mr. Banks responds: "A: Based upon my analysis of the nature of the case, I would make a recommendation as to counsel that should be assigned to the case."). Mr. Banks testified that Liberty Mutual and WHR reached an agreement under which a portion of DLA Piper's fees would be allocated against Liberty Mutual's policies and a portion would be paid directly by WHR. Defs. SMF Ex. D at 63:14-64:10.

**Paragraph 19**: This representation was also made pursuant to Wyndham's "Legal Representation Terms and Conditions" regarding outside counsel. *Id.* at "Exhibit F."

**Response:** Disputed. Paragraph 19 does not identify the "representation" to which the Paragraph refers. To the extent Paragraph 19 refers to Paragraph 18, the Wyndham Plaintiffs incorporate their response to Paragraph 18.

**Paragraph 20**: Mr. Banks did not testify which of the Wyndham Plaintiffs, if any, in fact, actually retained DLA Piper to represent the various entities related to, and including, the Wyndham Plaintiffs in the Underlying Actions.

**Response**: Disputed. Paragraph 20 fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence. Paragraph 20 is further disputed because the Wyndham Plaintiffs retained DLA Piper to defend them in the Underlying Actions. *See* Defs. SMF Ex. D at 52:24-53:17 (witness testifying the Wyndham Plaintiffs were "transparent" with their insurer about their retention of DLA).

8

**Paragraph 21**: As a result, Liberty Mutual agreed to pay the following restricted rates to DLA Piper directly, as outlined below, ostensibly on behalf of the Wyndham Plaintiffs, although such being unsubstantiated:

> For National Coordinating Counsel (NCC) assigned to DLA Piper, Liberty Mutual (LM) agrees to pay the following rates to the firm directly:
> 50% of the hourly rate up to a maximum* of:
> Partner $370
> Of Counsel $300
> Sr. Associate $300
> Jr. Associate $280
> Paralegal $120
> * for example, if the billed partner rate is $800/hour LM will pay $370. If the billed senior associate rate is $650/hour LM will pay $300. If the billed senior associate rate is $500, Liberty and Wyndham will each pay $250.
> Please identify any additional billing levels that DLA Piper has proposed.
>
> For all local counsel, nationwide, LM agrees to pay the following rates to the firm directly:
> Partner $185
> Associate $165
> Paralegal $95
>
> Thus far, local counsel has been identified as follows:
>
> OH: Redacted
>
> PA: Plaintiffs BH and CA - DLA Piper
>
> TX: Redacted
>
> For NCC and local counsel, Wyndham agrees to pay the delta of hourly rate above and beyond what LM has agreed to above. For instance, if Wyndham has agreed to pay Redacted a partner rate of $600/hour then LM will pay $185 and Wyndham will pay $415. Each firm will bill LM electronically through Lexis Nexis' CounselLink platform at the rates LM agrees to above. By agreement, billing by all firms, both local and NCC, will be subject to LM's Guidelines for Law Firms (attached and amended on an as needed basis with direct communication between the assigned adjuster and counsel). The law firms will bill Wyndham separately for the delta in rate.

*See* Email, dated May 9, 2019, Bates stamped DIW_4200Rose4193-4195, attached as **Exhibit E**.

**Response**: Disputed. The email cited as Exhibit E to Defendants' SMF sets forth an initial agreement as to rates and allocation for reimbursement by Liberty Mutual of DLA Piper's fees for certain of the Underlying Actions, subject to a reservation of rights.

**Paragraph 22**: Per the fee agreement, and pursuant to the Wyndham Terms and Conditions, the Wyndham Plaintiffs allegedly agreed to pay DLA Piper, as "national counsel," the "delta," or hourly rate, above and beyond what Liberty Mutual agreed to above for its attorneys' fees and costs, in their defense of the Underlying Actions. *Id.*

9

**Response**: Disputed. The Wyndham Plaintiffs admit that they reached an agreement with Liberty Mutual by which Liberty Mutual would cover a portion of the fees incurred for DLA Piper to defend the Underlying Actions, with the balance being paid by the Wyndham Plaintiffs. Such agreement was made subject to the reservation of all rights on behalf of the Wyndham Plaintiffs.

**Paragraph 23**: Invoices produced by the Wyndham Plaintiffs reflected hourly rates and hours billed by DLA Piper's attorneys, paralegal and discovery specialists, who allegedly performed work as it related to the defense of the Underlying Actions, which were allegedly paid by the Wyndham Plaintiffs, none of which have ever been substantiated, and which were summarized by Defendants' expert, Jeffrey McCarron, in Exhibits 3-B and 3-N of his expert report. See McCarron's Expert Report, attached as **Exhibit F**.

**Response**: Disputed. Paragraph 20 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence. DLA Piper's invoices reflect the work performed to defend the Underlying Actions and the invoices have been paid. *S*ee Pls. Ex. 2 (excerpt of billing records).

**Paragraph 24**: Exhibit 3-B to Mr. McCarron's report summarizes that partner and/or Of Counsel rates were in the range of $660.00 - $860.00 in 2019 and increased to a range of $825.00 - $950.00 by 2023 and Exhibit 3-N to his report summarizes the hours billed by DLA Piper's attorneys and staff, totaling approximately 7,084.40 hours – 4,361.11 hours of which were billed by partners and/or Of Counsel.

**Response**: Disputed. Paragraph 24 fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on

admissible evidence. With respect to the exhibits to Defendant's proposed expert's report, the Wyndham Plaintiffs dispute the characterization of the invoices from DLA Piper.

**Paragraph 25**: For example, towards the beginning of DLA Piper's billing, as it relates to defending the Underlying Actions, in approximately November 2019, DLA Piper's partners were charging a rate in a range of $740.00 - $806.00 per hour; associates were charging a rate in the range of $660.00 - $690.00 per hour; and staff were charging a rate in the range of $250.00 - $260.00 per hour:

### Time Summary

The following legal services were provided by DLA Piper LLP (US):

| Timekeeper | Title | Hours | Rate | Amount |
|---|---|---|---|---|
| Brogan, James M. | Partner | 1.40 | 860.00 | 1,204.00 |
| Goldberg, Matthew A. | Partner | 13.00 | 760.00 | 9,880.00 |
| Sager, David S. | Partner | 5.10 | 740.00 | 3,774.00 |
| Heller, Nathan P. | Associate | 8.70 | 690.00 | 6,003.00 |
| Torrey, Haley Dee | Associate | 8.50 | 660.00 | 5,610.00 |
| Souma, Terrence | Discovery Spec. | 5.90 | 250.00 | 1,475.00 |
| Calderon, Judy | Paralegal | 2.60 | 265.00 | 689.00 |

*See* Invoice for Professional Services Through November 30, 2019, attached as **Exhibit G**.

**Response:** Undisputed that the cited excerpt reflects the rates in effect as of November 2019.

**Paragraph 26**: By December 2022, DLA Piper's attorneys and staff had *__increased__* their rates, with DLA Piper's partners were charging a rate in a range of $900.00 – 950.00 per hour; Of Counsel charging $775.00 per hour; and staff were charging a rate in the range of $270.00 - $305.00 per hour:

**Time Summary**

The following legal services were provided by DLA Piper LLP (US):

| Timekeeper | Title | Hours | Rate | Amount |
|---|---|---|---|---|
| Rappaport, Nancy Shane | Partner | 12.80 | 950.00 | 12,160.00 |
| Goldberg, Matthew A. | Partner | 8.80 | 900.00 | 7,920.00 |
| Sager, David S. | Partner | 7.70 | 900.00 | 6,930.00 |
| Todaro, Anthony | Partner | 0.50 | 900.00 | 450.00 |
| Heller, Nathan P. | Of Counsel | 4.10 | 775.00 | 3,177.50 |
| Duffy Solarz, Nicole | Attorney | 4.50 | 430.00 | 1,935.00 |
| Calderon, Judy | Paralegal | 1.80 | 305.00 | 549.00 |
| Lodato, Michael F. | Paralegal | 0.30 | 305.00 | 91.50 |
| Morse, Ratasha | Paralegal | 0.70 | 270.00 | 189.00 |

*See* Invoice for Professional Services Through December 31, 2022, attached as **Exhibit H**.

**Response:** Undisputed that the cite excerpt reflects DLA Pipers rates as of the December 2022 invoice.

**Paragraph 27**: Mr. Banks testified that "Wyndham," without clarifying whether it was, in fact, the Wyndham Plaintiffs, paid all of the invoices as presented either for its part or under the self-insured retention except $510,000.00 paid by Liberty Mutual on the *C.A.* matter. **Exhibit D** at 161.

**Response**: Disputed. Paragraph 27 mischaracterizes the testimony and the role of the designee. Mr. Banks appeared as a corporate representative for the Wyndham Plaintiffs and testified that they paid all invoices issued by DLA Piper to defend the *C.A.* matter except insofar as a portion of the amount was in excess of the applicable retention amount (approximately $510,000). The Wyndham Plaintiffs deny that Paragraph 27 states material facts for purposes of the claim to enforce Defendants contractual and indemnity obligations.

**Paragraph 28**: Mr. Banks testified that the invoices submitted by DLA Piper were reviewed by "Wyndham," without specifying by whom, which department, or which "Wyndham" entity; ***whether they complied with the Wyndham Terms and Conditions***; and he did not describe

any criteria for reasonableness, except that he and the primary reviewer, Jennifer Haber, looked at the tasks and amount of time to see if the time billed "seemed" "reasonable." *Id.* at 93, 99, 101.

**Response**: Disputed. Paragraph 28 mischaracterizes the testimony and the role of the designee. Mr. Banks appeared as a corporate representative for the Wyndham Plaintiffs and testified that DLA Piper's invoices were reviewed by members of the legal department (primarily, Jennifer Haber and Mr. Banks) to confirm the reasonableness of the charges. The Wyndham Plaintiffs deny that Paragraph 28 states material facts for purposes of the claim to enforce Defendants contractual and indemnity obligations.

**Paragraph 29**: However, the review of the invoices was not performed for reasonableness "in the legal sense." *Id.* at 1225.

**Response**: Disputed. Paragraph 29 mischaracterizes the testimony. The testimony confirms that the Wyndham Plaintiffs reviewed the invoices "looking at reasonable in connection with what I think is a reasonable amount of time to handle a particular task." (Banks Dep. 125:22-126:1.) The testimony further confirms that the witness was not providing a legal opinion; he did not intend to use the term "reasonableness" in the "legal sense … in terms of [his] legal analysis or … work product." (*Id.* at 125:18-23). The Wyndham Plaintiffs deny that Paragraph 29 states material facts for purposes of the claim to enforce Defendants contractual and indemnity obligations.

**Paragraph 30**: Mr. Banks testified that the invoices were reviewed for compliance with Liberty Mutual's "guidelines," but the review did not include a line-by-line comparison for compliance with the guidelines, and not whether they were in compliance with Wyndham's specific Terms and Conditions. *Id.* at 100.

**Response**: Disputed. Paragraph 30 mischaracterizes the testimony. Mr. Banks testified that if a bill looked inconsistent "with the guidelines, [he would] call it out." *Id.* at 100:19-101:1. The Wyndham Plaintiffs deny that Paragraph 30 states material facts for purposes of the claim to enforce Defendants contractual and indemnity obligations.

**Paragraph 31**: There is no evidence that the Wyndham Plaintiffs evaluated the invoices by aggregating and ordering the time entries chronologically.

**Response**: Disputed. Paragraph 31 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence. Paragraph 31 also purports to impose a duty as to how to evaluate invoices and implies, without evidence, that the Wyndham Plaintiff did not, or could not, review time entries chronologically. The Wyndham Plaintiffs deny that Paragraph 31 states material facts for purposes of the claim to enforce Defendants contractual and indemnity obligations.

**Paragraph 32**: Mr. Banks testified that, in terms of the review process of DLA Piper's invoices, other than reviewing the nature of the task and the time incurred on the invoices, he could not point to anything else reviewed. *Id.* at 99.

**Response**: Disputed. Paragraph 32 mischaracterizes the testimony. Mr. Banks testified that he "look[ed] at each invoice and the tasks that are performed as reflected in each invoice before we approv[ing] an invoice to determine whether we have any questions regarding the invoice and the tasks performed or the amount of time incurred." Defs. SMF Ex. D at 99:19-99:24. The Wyndham Plaintiffs deny that Paragraph 32 states material facts for purposes of the claim to enforce Defendants contractual and indemnity obligations.

**Paragraph 33**: Other than producing Mr. Banks's self-serving testimony, the Wyndham Plaintiffs have not produced any evidence, or at a minimum sufficient evidence, to support their claims against Defendants contained in the Complaint in this Indemnity Action for reasonable attorneys' fees and costs.

**Response**: Disputed. Paragraph 33 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence.

**Paragraph 34**: The Wyndham Plaintiffs did not produce any affirmative expert report in this Indemnity Action as to the reasonableness of their claimed attorneys' fees and costs.

**Response**: Disputed. Paragraph 34 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence. The Wyndham Plaintiffs disclosed and produced a report from the Hon. Donald Steckroth (ret.) as an expert witness regarding the reasonableness of DLA Piper's rates. *See* Pls. Ex. 3.

**Paragraph 35**: The Wyndham Plaintiffs did not produce any evidence, including attorney affidavits, regarding the expertise, experience, reputation, and ability of any of the DLA Piper attorneys who performed work and billed time on the Eight Underlying Actions, or evidence indicating any calculations of their claimed fees or rates.

**Response**: Disputed. Paragraph 35 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence. The Wyndham Plaintiffs produced the invoices reflecting the fees and costs they are seeking to recover and evidence supporting their amounts and reasonableness. Mr. Banks, testifying as a corporate representative, confirmed his familiarity with

DLA Piper and that any questions or concerns he had regarding the work performed were addressed in the ordinary course of the representation. The Wyndham Plaintiffs disclosed and tendered the Hon. Donald Steckroth (ret.) as an expert witness, who produced an independent report opining that the rates billed by DLA Piper are reasonable. The Wyndham Plaintiffs deny that Paragraph 35 states material facts for purposes of the claim to enforce Defendants contractual and indemnity obligations.

**Paragraph 36**: No evidence, or at a minimum sufficient evidence, was produced by the Wyndham Plaintiffs to establish that their fees and costs incurred to defend the Underlying Actions or to enforce the License Agreement and Guaranty were reasonable in the geographical locality of Philadelphia, Pennsylvania, for similar legal services rendered.

**Response**: Disputed. Paragraph 36 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence. The Wyndham Plaintiffs further incorporate their response to Paragraph 35.

**Paragraph 37**: "[R]easonable attorneys' fees" is not defined in Section 8.2 of the License Agreement and there is not any evidence produced by the Wyndham Plaintiffs that they (1) defined, valued, or explained what "reasonable attorneys' fees" would be to Mr. and Mrs. Patel, (2) communicated the fee agreement between the Wyndham Plaintiffs and Liberty Mutual in the defense of the Underlying Actions to Defendants, including Mr. and Mrs. Patel, at the commencement of the defense of the Underlying Actions, or (3) communicated the rates that were charged by DLA Piper, the Wyndham Plaintiffs' chosen counsel, and agreed to by the Wyndham Plaintiffs in defense of the Underlying Actions to Defendants, including Mr. and Mrs. Patel, at any point in time.

**Response**: Disputed. Paragraph 37 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence. The Wyndham Plaintiffs notified Defendants of the pendency of the Underlying Actions and of Defendants' obligations under the License Agreement and Guaranty. Defendants failed to comply with those obligations. *See* Pls. SMF Exs. 15-21.

**Paragraph 38**: Based on the foregoing, where the indemnification provision of the License Agreement is unenforceable due to ambiguity and/or vagueness of terms, and where the Wyndham Plaintiffs have failed to produce any evidence as to the reasonableness of their claimed fees, the Wyndham Plaintiffs' claims fail as a matter of law and Defendants are entitled to summary judgment on all of the Wyndham Plaintiffs' claims, and this matter should be dismissed, with prejudice. *See* Defendants' Brief in Support of its Motion for Summary Judgment.

**Response**: Disputed. Paragraph 38 constitutes argument and fails to identify any evidence to support its assertions and thus fails to satisfy the requirements of Local Rule 56.1 or to state a material fact based on admissible evidence.

Dated: February 4, 2025

Respectfully submitted,
**DLA PIPER LLP (US)**

*s/ David S. Sager*
David S. Sager, Esq.
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel.: (973) 520-2570
Fax: (973) 215-2604
Email: david.sager@us.dlapiper.com

Nathan P. Heller, Esq.
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103-7300
Tel.: (215) 656-3372
Fax: (215) 606-3372

Email: nathan.heller@us.dlapiper.com

*Attorneys for Plaintiffs*
*Days Inns Worldwide, Inc.,*
*Wyndham Hotel Group, LLC,*
*and Wyndham Hotels & Resorts, Inc.*