# EXHIBIT 3

| | |
|---|---|
| **From:** | Heller, Nathan |
| **Sent:** | Thursday, October 31, 2024 11:16 AM |
| **To:** | Conrad James Benedetto; Susan Keesler |
| **Cc:** | Heller, Nathan; Sager, David S. |
| **Subject:** | Days Inns Worldwide v. 4200 Rose |
| **Attachments:** | 2024-10-31 DIW v 4200 Rose -- Encl Letter for Steckroth Report.pdf; DIW v 4200 Rose -- Steckroth Report.pdf; DIW v 4200 Rose -- Steckroth Report (Exhibit 1).pdf; DIW v 4200 Rose -- Steckroth Report (Exhibit 2).pdf; DIW v 4200 Rose -- Steckroth Report (Exhibit 3).pdf |

Hi Conrad and Sue,

Please see the attached regarding Plaintiffs' expert report in the Days Inns Worldwide v. 4200 Rose matter.

Very truly yours,

Nate

## Nathan P. Heller
Of Counsel

---

T  +1 215 656 3372
F  +1 215 606 3372
M  +1 717 309 0565
nathan.heller@us.dlapiper.com

**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA  19103-7300



dlapiper.com



**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103
www.dlapiper.com

Nathan P. Heller
nathan.heller@us.dlapiper.com
T   215.656.3372
F   215.606.3372

October 31, 2024

*VIA ECF*

Conrad J. Benedetto
Susan C. Keesler
McCORMICK & PRIORE P.C.
2001 Market Street, Suite 3810
Philadelphia, PA 19103

Re:    *Days Inns Worldwide, Inc. v. 4200 Rose Hospitality LLC, et al.*
       No. 2:22-cv-04822 (D.N.J.)

Dear Conrad and Sue:

In accordance with the amended scheduling order in the above matter, enclosed please find the report and related exhibits of the Hon. Donald H. Steckroth (ret.) on behalf of Plaintiffs Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Days Inns Worldwide, Inc. Judge Steckroth reserves the right to amend his report in accordance with Federal Rule of Civil Procedure 26.

Very truly yours,

Nathan P. Heller

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000 201-489-1536 fax

—

New York

—

Delaware

—

Maryland

—

Texas

—

Florida

## COLE SCHOTZ P.C.

Donald H. Steckroth
Of Counsel
Admitted in NY and NJ

Reply to New Jersey Office
Writer's Direct Line: 646.563.8956
Writer's Direct Fax: 646.563.7956
Writer's E-Mail: dsteckroth@coleschotz.com

October 31, 2024

David S. Sager, Esq.
DLA Piper LLP (US)
51 John F. Kennedy Parkway
Suite 120
Short Hills, NJ 07078-2704

> Re: Days Inns Worldwide, Inc., Wyndham Hotel Group, LLC, and Wyndham Hotels
> & Resorts, Inc., v. 4200 Rose Hospitality LLC, Indra Patel, and Jyoti Patel,
> United States District Court of New Jersey,
> Case No. 2:22-cv-04822-BRM-CLW

Dear Mr. Sager:

I am providing my expert report containing my analysis and opinion of the attorney fee rates of the Plaintiffs' counsel. I understand the scope of my engagement is to opine on (i) the reasonableness of the billing rates of DLA Piper LLP (US) ("DLA Piper") for the fees sought in the Amended Complaint and (ii) the reasonableness of Wyndham Hotels & Resorts, Inc.'s ("WHR") engagement of DLA Piper as national counsel for litigation related to human trafficking. The Amended Complaint seeks to recover the fees and costs associated with defending eight litigation matters (collectively "the Underlying Actions") in the Philadelphia Court of Common Pleas from 2019 through 2023 under the indemnification provisions of a franchise agreement executed between Plaintiff Days Inns Worldwide, Inc. ("DIW") and Defendant 4200 Rose Hospitality LLC ("4200 Rose Hospitality").

## I.    <u>Qualifications</u>

I am an attorney licensed in the federal and state courts in New Jersey and New York. My practice has spanned 50 years as both an attorney representing clients and as a Federal Bankruptcy Judge. From 1972 to 2001, I had an active corporate and bankruptcy litigation practice primarily in New Jersey and surrounding jurisdictions, including Pennsylvania. In 2001, I was nominated and appointed to the Federal Bankruptcy Court in the District of New Jersey and served as a judge


COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 2

in that court sitting in Newark, New Jersey until my retirement from the Bench in 2015. I am currently Of Counsel to Cole Schotz P.C. primarily involved in ADR matters and have been appointed as receiver, special master, examiner, and mediator by various courts in complex litigation matters. I am admitted to the state bars of New Jersey and New York as well as to the United States Supreme Court, United States Court of Appeals for the Third Circuit, and the United States District Courts for the District of New Jersey and the Eastern and Southern Districts of New York. A copy of my biography setting forth my credentials, experience, professional associations, and memberships is attached as Exhibit 1.

My experience in private practice and as a Federal Judge includes extensive review of fee applications and billing issues, particularly in complex court matters, including significant chapter 11 reorganization cases. I have reviewed for approval thousands of fee applications while on the Bankruptcy Bench from 2001-2015, which involved evaluation and approval of the reasonableness of billing rates of counsel. To my knowledge, none of my fee decisions or orders approving fees were reversed on appeal.

I am very familiar with the New Jersey legal community and surrounding jurisdictions, including Philadelphia, relative to billing rates for litigation services. In my experience, billing rates are relatively consistent for quality counsel in major cases in the large metropolitan area including New Jersey and Southeastern Pennsylvania. In fact, many large firms that specialize in substantive litigation have offices in both Philadelphia and New Jersey and have similar rates in each office.

My rate for work performed in the present matter is $900 per hour.

**II.    Background**

    **A.    Documents Reviewed and Known Information**

In forming my opinions, I reviewed the documents and materials identified in this report. I also reviewed and considered the rates charge by DLA Piper for the defense of Plaintiffs in the in the Underlying Actions, as reflected in the DLA Piper invoices. Information known to me independent of the listed documents considered in forming opinions is stated in the report. I am knowledgeable about legal fee rates from exposure to legal fee invoices prepared by law firms throughout the nation, including New Jersey and Pennsylvania. My familiarity with law firm fee structure is informed in large part, but not exclusively, by the thousands of fee applications on which I ruled during my 14 years on the Bankruptcy Bench.

    **B.    License Agreement**

On April 23, 2008, DIW and 4200 Rose Hospitality entered into a License Agreement that authorized 4200 Rose Hospitality to operate a 116-room Days Inn® guest lodging facility at 4200 Roosevelt Boulevard, Philadelphia, PA 19124 ("Facility"). Am. Compl. ¶ 9, License Agreement.

 COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 3

Pursuant to Section 8.2 of The License Agreement, 4200 Rose Hospitality agreed to provide indemnity and to:

> **reimburse the Indemnitee for all costs of defending the matter, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest.**

License Agreement §8.2, pp. 10-11 (emphasis added), *see also* Am. Compl. ¶¶ 10-11. In connection with the License Agreement, Defendants Indra Patel and Jyoti Patel executed a guaranty ("the Guaranty") under which they agreed to guarantee and personally perform the obligations of 4200 Rose Hospitality under the License Agreement.

The License Agreement further defined "Indemnitees" to encompass DIW's "direct and indirect parent, subsidiary and sister corporations." License Agreement at Appendix A, Definitions, pg. 27, *see also* Am. Compl. ¶ 12. This includes Plaintiff Wyndham Hotel Group, LLC ("WHG"), the parent company of DIW, and Plaintiff WHR, the ultimate parent of DIW.

Pursuant to Section 17.4 of the License Agreement, 4200 Rose Hospitality further agreed that, in any litigation to enforce the provisions of the Agreement:

> The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement.

License Agreement § 17.4, pg. 20, see also Am. Compl. ¶ 13. The License Agreement provides that the choice of law is New Jersey. License Agreement at § 17.6.1.

## III.   **The Eight Human Trafficking Actions and This Action**

Since 2019, eight individual plaintiffs, proceeding by pseudonym, filed the Underlying Actions in the Philadelphia Court of Common Pleas naming DIW, WHG, and WHR as defendants. In all cases, the plaintiffs alleged that they were the victims of human trafficking at the Facility at various times between 2011 and 2013. I have reviewed the complaints in each of the Underlying Actions, which are set forth at Paragraph 15 in the Amended Complaint.[1] I understand that

---

[1] The Amended Complaint identifies nine Underlying Actions. I understand that Plaintiffs' claims for fees and costs associated with one of those matters—the *A.H.* action—have been resolved. Accordingly, the opinions set forth herein apply only to the fees and costs associated with the eight Underlying Actions other than *A.H.*


COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 4

Underlying Actions were resolved by a settlement in early 2023, which resulted in dismissal of the claims against Plaintiffs and Defendants in this matter.

DIW, WHG, and WHR commenced the present civil action (hereinafter "the Indemnity Action") on July 29, 2022 in the United States District Court of District of New Jersey against 4200 Rose Hospitality, Indra Patel and Jyoti Patel. Plaintiffs maintain claims for contractual and common law indemnity against 4200 Rose Hospitality and for breach of the Guaranty against Indra Patel and Jyoti Patel. Plaintiffs seek to recover the attorneys' fees and costs incurred to defend the Underlying Actions and to prosecute the Indemnity Action. *See* Am. Compl. I understand that Plaintiffs are seeking reimbursement of attorneys' fees and costs in the total amount of $5,286,547.84 incurred in defending the Underlying Actions. I also understand that Plaintiffs seek reimbursement of attorneys' fees and costs in this Action, which total in excess of $175,000 and continue to accrue. Supp. Init. Disc.

## IV.    Legal Standard for Reasonableness of Fees

The License Agreement is governed by New Jersey law. License Agreement § 17.6.1. New Jersey courts look to Rule of Professional Conduct 1.5(a) to determine the reasonableness of attorneys' fees. Pursuant to *R.P.C.* 1.5(a), the reasonableness of fees will be determined based upon the following factors:

(1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)   the fee customarily charged in the locality for similar legal services;

(4)   the amount involved and the results obtained;

(5)   the time limitations imposed by the client or by the circumstances;

(6)   the nature and length of the professional relationship with the client;

(7)   the experience, reputation, and ability of the lawyer or lawyers performing the services; [and]

(8)    whether the fee is fixed or contingent.

 COLE SCHOTZ p.c.

David S. Sager, Esq.
October 31, 2024
Page 5

*Di Filippi v. Target Corp.*, No. A-6050-05T2, 2008 WL 141152, at *5 (N.J. Super. Ct. App. Div. Jan. 16, 2008) (applying R.P.C. 1.5(a) to determine the reasonableness of attorneys' fees pursuant to an indemnification agreement).

The U.S. District Court for the District of New Jersey has explained that "[w]hen ascertaining the dollar amount of an attorneys' fee award, the New Jersey Supreme Court applies the same test for reasonable attorneys' fees in contract cases that we use in other attorneys' fee award cases in New Jersey. *Hunt Const. Grp., Inc. v. Hun Sch. of Princeton*, No. CIV.A. 08-3550, 2012 WL 113606, at *4–5 (D.N.J. Jan. 13, 2012) (quoting *Litton Industries, Inc. v. IMO Industries, Inc.,* 200 N.J. 372, 982 A.2d 420 (2009)).

The Court in *Hunt Construction Group* further explained that:

> As for the hourly rate, the reasonableness of the prevailing counsel rates proposed must be evaluated in comparison to rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." [*Furst v. Einstein Moomjy, Inc.,* 182 N.J. 1, 22, 860 A.2d 435 (2004) (internal quotes omitted)].

*Hunt Const. Grp.*, 2012 WL 113606, at *4–5.

The usual rule with respect to the reasonableness of rates provides for the market rate to be charged. *Interfaith Cmty Org. v. Honeywell Int'l*, 426 F.3d 694, 704 (3d Cir. 2005). A departure from the forum rate would only be appropriate where there is a need for special expertise of counsel from a distant district or where local counsel are unwilling to handle the case. *Id.*

## V.    A Litigant's Right to Choice of Counsel

Inherent in New Jersey law is a litigant's right to choose their counsel. *Est. of Beczo ex rel. Beczo v. Port Lumber Corp.,* No. CV231338MASRLS, 2024 WL 1743061, at *2(D.N.J. Apr. 23, 2024) (applying this in the context of a motion to disqualify counsel); see also *Steel v. Gen. Motors Corp.*, 92 F. Supp. 724, 733 (D.N.J. 1995), *aff'd sub nom*. *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968 (D.N.J. 1996); *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 218, 536 A.2d 243, 251-52 (1988); *Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264, 279, 44 A.3d 592, 601 (2012). A "client's right to be represented by counsel of its choosing is an important one to be both cherished and protected." *Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264, 279, 44 A.3d 592, 601 (2012).

Case law on the issue of a challenge to an indemnitee's selection of counsel is limited. The Delaware Chancery Court made clear that an indemnification agreement containing a selection of counsel clause may not be used to force an indemnitee to accept a less than reasonable defense. *Chamison v. HealthTrust—Hosp. Co.,* 735 A.2d 92, 922 (Del. Ch. 199), *aff'd*, 748 A.2d 407 (Del. 2000). In *Sleenten v. Navellier Series Fund,* 276 F. Supp. 2d 1067 1072 (D. Nev. 2003), *as corrected* (June 27, 2003), the Court explained that the parties should have reasonably expected

 COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 6

that the indemnitee would be able to choose competent counsel.  In other words, a contractual indemnitor obligated to cover the costs of an indemnitee's defense may not invoke the payment obligation to force the indemnitee to accept less-than-competent counsel.

The District Court for the District of Kansas similarly considered contractual indemnification rights where the parties did not include a counsel section clause. *Westar Energy, Inc. v. Lake,* 493 F. Supp. 2d 1126 (D. Kan.), *order clarified,* 502 F. Suppl 1191 (D. Kan. 2007), *aff'd in part, rev'd part and remanded,* 552 F.3d 1215 (10th Cir. 2009), and *aff'd in part and remanded,* 552 F.3d 1215 (10th Cir. 2009).  The Court was clear that:

> Had [the Indemnitor] intended to limit an indemnified party's choice of counsel by rates or region, it was free to do so in drafting its advancement and indemnification provisions.  The time to have limited [the indemnitee] in his choice was at the time of contract formation.

The court further explained that "the reasonableness analysis applicable to a contractual right to attorneys' fees is based on the overall reasonableness term present in all contracts.  The relevant question is whether [the indemnitee's] decision to retain out-of-state counsel was necessarily unreasonable." *Id.* At 1143-1444.

## VI.    <u>Reasonableness of Billing Rates</u>

The underpinning of my opinion on the reasonableness of DLA Piper's billing rates is the available information on the prevailing market rates together with my experience in dealing with and approving billing rates for litigation matters similar in their novelty and complexity to the Underlining Actions. The consideration of reasonableness of rates depends on the experience, expertise, skill and reputation of counsel relative to the location of the litigation for similar services, the novelty and difficulty of the issues presented, the skill to perform the services successfully, the amount involved, and the importance of the result achieved to the client. See R.P.C. 1.5(a).

Defendants' expert, Jeffrey McCarron, opines that the reasonable attorney fees for the defense of the Plaintiffs in the Underlying Actions are $190 per hour for partners, $165 per hour for associates and $95 per hour for paralegals. See Defendants Expert Report dated September 4, 2024 at p. 14.  These proposed rates are shockingly low and well below prevailing rates for competent counsel, especially in matters of such consequence as the Underlying Actions.  These actions are not routine landlord-tenant cases, slip and fall actions, or simple negligence or contact disputes (and the rates proposed by Defendants' expert are shockingly low for such matters in any event). The serious actions alleging human trafficking at the 4200 Rose Hospitality Facility attack the goodwill of Plaintiffs' brand and entail potentially substantial exposure for a hotel franchisor and its affiliates, especially because franchisors such as DIW do not exercise operational control over the property from which the alleged liability arises.  Such matters deserve to be defended by


COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 7

counsel of choice, experienced, competent and dedicated to the protection of the client's business reputation.

In Philadelphia, the Community Legal Services, Inc. ("CLS") has established a fee schedule reflecting market rates in the area. *Maldonado v. Houston*, 259 F.3d 181 (3rd Cir. 2001). CLS is a nonprofit organization that provides no-cost legal services throughout the Philadelphia area. While CLS does not charge its clients for its services, the fee schedule outlines the rates that CLS seeks when it prevails in a matter that allows fee recovery from a defendant. *See* Community Legal Services, *Attorney's Fees: Explanatory Notice to the Public,* https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited October 21, 2024). The fee schedule is "based on Philadelphia law firm market survey data and increases in the Consumer Price Index." The current CLS range of hourly rates is attached as Exhibit 2.

The range is based solely on attorney experience. For 2023, the fee schedule ranges from $850 per hour for attorneys with more than 25 years' experience to $235 for under 2 years' experience. Using experience as the sole factor is a shortcoming and ignores the other factors associated with fee rate analysis under the Rules of Professional Conduct such as the skill, reputation and ability of counsel, the novelty and difficulty of the issues involved, the importance of the litigation to the client, and the nature and length of the professional relationship with the client. R.P.C. 1.5(a). Certainly, one factor does not satisfy all situations or litigations. If anything, the CLS schedule is an unduly conservative measure to apply to a matter like this one because CLS's practice focuses on landlord-tenant, utility, employment, and other consumer- and individual-focused individuals not representative of the sophisticated commercial and franchise issues implicated by the defense of the Underlying Actions.

Nonetheless, the CLS schedule shows that the rates billed by DLA Piper for the defense of the Underlying Actions and the prosecution of the Indemnity Action were eminently reasonable. DLA Piper invoices reflect billing rates for 2019 and 2020 from $860/920 to $740/775 for partners, $690/695 to $600/695 for experienced associates and $250/290 for paralegal and research staff, subject to reasonable annual adjustments, as reflected by year in the following chart;

| Title | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|
| Partner | $740 | $775 | $825 | $900 | $950 |
| Of Counsel | n/a | n/a | n/a | $775 | $825 |
| Associate | $690 | $695 | $725 | $750 | n/a |
| Paralegal | $265 | $275 | $290 | $305 | $325 |



COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 8

These rates are consistent with the rates suggested by the CLS schedule without any consideration for the factors which would tend to increase rates and I believe demonstrate the reasonableness of the rates charged by DLA Piper.

Another relevant comparable fee matrix is published by the U.S. Attorney's Office for the District of Columbia (the "USAO Matrix"). See attached as Exhibit 3. The U.S. Attorney's Office relies on the matrix in cases in which it defends claims brought against the federal government. If a fee recovery petition is filed against the government, the U.S. Attorney's Office does not context the reasonableness of hourly rates provided that they are less than or equal to the USAO Matrix. The matrix is based on hourly rates for legal services for complex federal litigation in the District of Columbia and is adjusted annually. Like the CLS fee schedule, the USAO Matrix is a helpful guidepost that confirms the reasonableness of DLA Piper's rates. For 2019-2020, presumptively reasonable hourly rates range under the USAO Matrix range from $703/731 for attorneys with extensive experience to $412/439 for attorneys with only one year experience. For 2023, the presumptively hourly rates range from $807 to $485 based on years of experience. These rates are also consistent with the rates charged by DLA Piper in the Underlying Actions and the Indemnity Action. Importantly, they point out the grossly unrealistic rates suggested by Defendants, and support the billing rates in dispute.

My experience in evaluating hourly rates leads to the conclusion and opinion that the rates billed by DLP Piper are reasonable for defense of Plaintiffs in the Underlying Actions and the Indemnity Action. During my time on the bench, I observed rates customarily increase annually, and it was not unusual for experienced partner rates to range up to $950-$1,000 per hour for litigators with associates rates ranging up to $700 for experienced litigators in major matters such as involved here. Since retirement and my return to practice, my experience observing billing rates in fee applications confirms that rates continue to increase annually.

In sum, there is nothing unusual or extreme in the billing rates of Plaintiffs' counsel. They are consistent with the range of rates I have experienced over the past years I served on the Federal Bench and in practice since my retirement.

## VII.  Reasonableness of National Counsel Engagement.

Suits against Plaintiffs alleging human trafficking have been filed in numerous jurisdictions since at least March 2019. Plaintiffs' defense of these actions is coordinated by DLP Piper as national counsel. The role of national counsel provides for consistent oversight, experience in similar actions, expertise, and efficiency in the defense of the serious actions alleged in the Underlying Actions. Retention of national counsel is a common practice for large companies to ensure each case, no matter the jurisdiction, is reviewed and the representation and legal positions are consistent. This provides for assistance to local counsel in each jurisdiction in defense of

 COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 9

plaintiffs. As previously stated, the human trafficking actions are critically important to the corporate credibility and protection of Plaintiffs' hospitality brand. (See Section VI).

Clearly, national counsel provides efficiency in each litigation. It helps to reduce the unnecessary duplication of work across matters, both by national counsel handling litigation directly (as occurred here) or by providing assistant to local counsel. It also allows counsel to utilize experience, work product, research, and strategies developed in one case in others throughout the country. Consistency and efficiency are critical to proper and successful defense of similar issues facing the same defendant in different jurisdictions, and this cannot be accomplished by retaining a piecemeal network of local attorneys without management at a national level.

The billing rates of DLP Piper's services as national counsel are the firm's usual billing rates and subject to the same analysis and opinions discussed in Section VI above. The rates are, in my professional opinion, reasonable rates for the services performed.

It is my expert opinion that the engagement of DLP Piper as national counsel for human trafficking litigations, including the Underlying Actions, is necessary and reasonable. These cases are critical to protection of Plaintiffs' brand and goodwill in the hospitality industry, and, through the engagement of national counsel, Plaintiffs were able to coordinate their defense and achieve efficiency throughout the various jurisdictions in which they are sued.

## VIII. **Opinions**

Based upon my review of information available to me and my professional experience, my opinions, which I hold with a reasonable degree of professional certainty, are as follows:

1. The hourly rates charged by DLA Piper are reasonable and within the range of hourly rates that normally are charged by competent counsel for complex litigation in the relative market area, namely Philadelphia.

2. The engagement of DLA Piper as national counsel is reasonable in order to provide efficiency and consistency in the clients' defense of national human traffic matters which are the subject of the Underlying Actions.

 COLE SCHOTZ P.C.

David S. Sager, Esq.
October 31, 2024
Page 10

## IX.    <u>**Conclusion**</u>

My opinions expressed in this report are based upon my understanding of the operative law, my experience regarding the subject matter of this report, and the information available to me.

Very truly yours,

*/s/ Donald H. Steckroth*

Donald H. Steckroth

DHS:mjm

# Exhibit 1

COLE SCHOTZ P.C.

# DONALD H. STECKROTH

## OF COUNSEL



**OFFICE** 646.563.8956

**EMAIL** dsteckroth@coleschotz.com

**MEGAN J. MUSALL** | **LEGAL PRACTICE ASSISTANT**

212.752.8000 ext. 3010     mmusall@coleschotz.com

The Honorable Donald H. Steckroth provides arbitration and mediation services to attorneys and their clients as they navigate complex bankruptcy proceedings.

# EXPERIENCE

Judge Steckroth leverages fifteen years of experience in his arbitration and mediation practice. He is committed to guiding clients through bankruptcy and restructuring matters and ensuring favorable outcomes for all stakeholders. Regularly appointed by the court and sought after by first-rate counsel, the judge has a reputation for structuring processes that are prompt, fair and impartial.

Previously, a United States Bankruptcy Judge for the District of New Jersey, the Judge has presided over many of the largest bankruptcy filings in New Jersey and covering a broad range of industries, including healthcare, retail, real estate, and telecom. Notable chapter 11 proceedings include those for Hudson Healthcare, 710 Long Ridge Road, Barnert Hospital, Mandee's, Annie Sex, Afaze, Manyfoods, Zayat Stables, NJ Affordable Homes Corp. and Tarragon Corporate.

Prior to his appointment to the Bench, Judge Steckroth was in private practice for twenty-eight years, where he was a partner specializing in bankruptcy law and creditors' rights.

## REPRESENTATIVE MATTERS

**Since returning to private practice, Judge Steckroth has been actively involved in complex financial matters including:**

- Retention by the State of New Jersey to serve as mediator in the financial crisis in Atlantic City which involves assisting the City's Emergency Manager and the operating casinos in resolving outstanding tax revenue issues.
- Court appointment in the Bankruptcy Court for the Southern District of New York to mediate an adversary proceeding involving counsel fees dispute among several groups of class action counsel and the allocation of 70+ million dollars held in trust pending resolution.
- Appointed by the Bankruptcy Court for the District of New Jersey as Mediator in the LTL Management, LLC Chapter 11 case involving Johnson and Johnson and Ovarian and Mesothelioma mass tort claimants, as well as Ad Hoc Committee States' Attorney Generals.
- Successfully mediated an attorney malpractice action arising out of a prior bankruptcy proceeding.
- Appointment as mediator for a pending adversary proceeding and contested plan confirmation in the healthcare industry.
- Named Examiner by U.S. Trustee in the Chapter 11 Proceeding in Zucker, Goldberg & Ackerman, L.L.C. (Case No. 15-24585) to investigate and report any and all claims against insiders and related third parties as well as any matters determined to be appropriate by the Examiner. The Examiner's Report was filed November 8, 2016, and continued as mediator with Debtor and Creditors in structuring joint plan of reorganization.
- Successfully mediated $4.5 million fraudulent conveyance and breach of contract action filed by assignee in assignment for the benefit of creditors proceeding.
- Successfully mediated Chapter 11 Debtor's claim objection to $4.5 million dollar IRS claim in Chapter 11 Proceeding.

⊗ COLE SCHOTZ P.C.

- Successfully mediated a $2.2 million dollar insurance claim in a contested Chapter 11 Adversary Proceeding.
- Appointed as Mediator in the Southern District of New York Chapter 11 (Windstream Holdings, Inc.) to resolve (successfully) executory contracts and plan objections.
- Mediated directors and officers dispute involving breach of fiduciary duty, corporate waste and fraudulent transfer.

## NETWORKS & AFFILIATIONS

Judge Steckroth is a frequent speaker on current bankruptcy and restructuring issues and has been actively involved with organization such as:

- American Bankruptcy Institute
- American Bar Association
- Association of Insolvency and Restructuring Advisors
- Bankruptcy Inn of Court
- National Conference of Bankruptcy Judges (NCBJ), including serving on the Board of Governors as Third Circuit governor and the Benefits and Finance Committees
- New Jersey Bar Association Bankruptcy Law Section
- New Jersey Institute of Continuing Legal Education
- New York Institute of Credit
- Seton Hall Law School
- Turnaround Management Association

Prior to joining the bench, he was appointed by the New Jersey Supreme Court to serve on the New Jersey Bar Examiners Committee on Character for twelve years and chaired the Committee's oversight of all out-of-state applicants to the New Jersey Bar.

## EDUCATION

Seton Hall University, B.S.
Seton Hall University School of Law, J.D.

## BAR & COURT ADMISSIONS

New York
New Jersey
U.S. District Court, Southern District of New York
U.S. District Court, Eastern District of New York
U.S. Court of Appeals for the Third Circuit
U.S. District Court, District of New Jersey

# Exhibit 2

Center City Office: 1424 Chestnut St. Phila, PA 19102

North Philadelphia Law Center: 1410 W. Erie Avenue Phila, PA 19140     f  X  ⊙  in

Center City Office: 1424 Chestnut St. Phila, PA 19102

North Philadelphia Law Center: 1410 W. Erie Avenue Phila, PA 19140

f  X  ⊙  in

🔍 SEARCH

f  X  ⊙  in

🏠 HOME     ⚖ SERVICES



✈ SPECIAL PROJECTS     📰 NEWS & ISSUES

HIDE MY VISIT

DONATE

ℹ ABOUT

# ATTORNEY FEES

Home  /  About CLS  /  Attorney Fees

### EXPLANATORY NOTICE TO THE PUBLIC

CLS never charges attorney's fees to its clients, although in some cases clients are asked to pay for court filing fees or other out of pocket expenses.

The attached chart lists the fee schedule used by CLS only in cases in which the law allows for the award of attorney's fees from opposing parties in order to compensate CLS for the legal services provided to its clients.

RANGE OF HOURLY RATES*, Effective January 19, 2023

| Attorneys post-law school experience under 2 years | $235-260 |
|---|---|
| Attorneys 2-5 year's experience | $265-315 |
| Attorneys 6-10 year's experience | $320-415 |
| Attorneys 11-15 year's experience | $420-525 |
| Attorneys 16-20 year's experience | $535-625 |
| Attorneys 21-25 year's experience | $630-715 |
| Attorneys more than 25 year's experience | $735-850 |

| Law Students | $140-190 |
| Paralegal 1-10 years experience | $190-240 |
| Senior and Supervisory Paralegal | $245-285 |

*These rates do not reflect any adjustment for contingency, and are based on Philadelphia law firm market survey data and increases in the Consumer Price Index.

**THESE FEES ARE NOT CHARGED TO CLS CLIENTS. SEE NOTICE ABOVE.**



**CONTACT INFO**

Center City Office

1424 Chestnut Street, Philadelphia, PA 19102 | 215-981-3700

North Philadelphia Office

1410 W. Erie Avenue, Philadelphia, PA 19140 | 215-227-2400

**Sign up for Our Newsletter**

Email

SUBMIT EMAIL

**SERVICES**

PUBLIC BENEFITS

EMPLOYMENT

HOUSING

DEBT & CONSUMER RIGHTS

UTILITIES

FAMILY

CRIMINAL RECORDS

GET HELP: SENIORS

**RECENT NEWS**

State Finalizes Regulations to Implement Occupational Licensing Reform

October 18, 2024

More people on SSI will get to keep their full benefits

September 25, 2024

Immigrant Rights

August 30, 2024

 © Community Legal Services of Philadelphia - 2024 | Website designed by TwoG Marketing

Annual Reports Board of Directors Leadership Council

# Exhibit 3

## THE FITZPATRICK MATRIX

Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia

| Years Exp. / Billing Yr. | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 35+ | 535 | 563 | 591 | 619 | 647 | 675 | 703 | 731 | 736 | 760 | 807 |
| 34 | 534 | 562 | 590 | 618 | 646 | 674 | 702 | 729 | 734 | 758 | 805 |
| 33 | 532 | 560 | 588 | 616 | 644 | 672 | 700 | 728 | 733 | 757 | 804 |
| 32 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 726 | 730 | 754 | 801 |
| 31 | 527 | 555 | 583 | 611 | 639 | 667 | 695 | 723 | 728 | 752 | 799 |
| 30 | 524 | 552 | 580 | 608 | 636 | 664 | 692 | 720 | 725 | 749 | 795 |
| 29 | 521 | 549 | 577 | 605 | 633 | 661 | 689 | 717 | 721 | 745 | 791 |
| 28 | 517 | 545 | 573 | 601 | 629 | 657 | 685 | 713 | 717 | 741 | 787 |
| 27 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 708 | 713 | 736 | 782 |
| 26 | 508 | 536 | 564 | 592 | 620 | 648 | 676 | 704 | 708 | 731 | 776 |
| 25 | 502 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 703 | 726 | 771 |
| 24 | 497 | 525 | 553 | 581 | 609 | 637 | 665 | 693 | 697 | 720 | 765 |
| 23 | 491 | 519 | 547 | 575 | 603 | 630 | 658 | 686 | 691 | 714 | 758 |
| 22 | 484 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 684 | 707 | 751 |
| 21 | 477 | 505 | 533 | 561 | 589 | 617 | 645 | 673 | 677 | 699 | 742 |
| 20 | 470 | 498 | 526 | 553 | 581 | 609 | 637 | 665 | 670 | 692 | 735 |
| 19 | 462 | 490 | 518 | 546 | 574 | 602 | 630 | 658 | 662 | 684 | 726 |
| 18 | 453 | 481 | 509 | 537 | 565 | 593 | 621 | 649 | 653 | 675 | 717 |
| 17 | 445 | 473 | 500 | 528 | 556 | 584 | 612 | 640 | 645 | 666 | 707 |
| 16 | 435 | 463 | 491 | 519 | 547 | 575 | 603 | 631 | 635 | 656 | 697 |
| 15 | 426 | 454 | 482 | 510 | 538 | 566 | 593 | 621 | 626 | 647 | 687 |
| 14 | 416 | 443 | 471 | 499 | 527 | 555 | 583 | 611 | 615 | 635 | 674 |
| 13 | 405 | 433 | 461 | 489 | 517 | 545 | 573 | 601 | 605 | 625 | 664 |
| 12 | 394 | 422 | 450 | 478 | 506 | 534 | 562 | 590 | 594 | 614 | 652 |
| 11 | 382 | 410 | 438 | 466 | 494 | 522 | 550 | 578 | 582 | 601 | 638 |
| 10 | 371 | 399 | 427 | 455 | 483 | 510 | 538 | 566 | 570 | 589 | 625 |
| 9 | 358 | 386 | 414 | 442 | 470 | 498 | 526 | 554 | 558 | 576 | 612 |
| 8 | 345 | 373 | 401 | 429 | 457 | 485 | 513 | 541 | 545 | 563 | 598 |
| 7 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 528 | 532 | 550 | 584 |
| 6 | 319 | 347 | 375 | 403 | 431 | 458 | 486 | 514 | 518 | 535 | 568 |
| 5 | 305 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 504 | 521 | 553 |
| 4 | 290 | 318 | 346 | 374 | 402 | 430 | 458 | 486 | 489 | 505 | 536 |
| 3 | 275 | 303 | 331 | 359 | 387 | 415 | 443 | 471 | 474 | 490 | 520 |
| 2 | 260 | 287 | 315 | 343 | 371 | 399 | 427 | 455 | 458 | 473 | 502 |
| 1 | 244 | 272 | 300 | 328 | 356 | 384 | 412 | 439 | 442 | 457 | 485 |
| 0 | 227 | 255 | 283 | 311 | 339 | 367 | 395 | 423 | 426 | 440 | 467 |
| P* | 130 | 140 | 150 | 160 | 169 | 179 | 189 | 199 | 200 | 207 | 220 |

* = Paralegals/Law Clerks

*Published by the U.S. Attorney's Office for the District of Columbia, Civil Division*

## Explanatory Notes

1.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared to assist with resolving requests for attorney's fees in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia. It has been developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged. *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019). The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components.

2.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. *E.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b). A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The matrix is not intended for use in cases in which the hourly rate is limited by statute. *E.g.*, 28 U.S.C. § 2412(d).

3.  For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires. *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (requiring "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services'")).

4.  The years in the column on the left refer to an attorney's years of experience practicing law. Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school. If the year of law school graduation is unavailable, the year of bar passage should be used instead. Thus, an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience. For all work beginning on January 1 of the calendar year following graduation (or bar admission), the attorney will have 1 year of experience. (For example, an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year. As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience.) Adjustments may be necessary if an attorney did not follow a typical career progression or was effectively performing law clerk work. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate).

5.  The data for this matrix was gathered from the dockets of cases litigated in the U.S. District Court for the District of Columbia using the following search in July 2020 in Bloomberg Law: keywords ("motion n/5 fees AND attorney!") + filing type ("brief," "motion," or "order") + date ("May 31, 2013 – May 31, 2020" under "Entries (Docket and Documents)"). This returned a list of 781 cases. Of those, cases were excluded if there was no motion for fees filed, the motions for fees lacked necessary information, or the motions involved fees not based on hourly rates, involved rates explicitly or implicitly based on an existing fee matrix, involved rates explicitly or implicitly subject to statutory fee caps (e.g., cases subject to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)), or used lower rates prescribed by case law (*e.g., Eley*, 793 F.3d at 105 (Individuals with Disabilities in Education Act

cases)).  After these excisions, 86 cases, many of which included data for multiple billers (and 2 of which only provided hourly rate data for paralegals), remained.

6.  The cases used to generate this matrix constitute complex federal litigation—which caselaw establishes as encompassing a broad range of matters tried in federal court.  *E.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 527-29 (D.C. Cir. 2016) (Tatel, J., concurring) (noting that cases arising under the Freedom of Information Act, Title VII, the Americans with Disabilities Act, Constitutional Amendments, antitrust statutes, and others have been deemed complex, and even "relatively small" cases can constitute complex federal litigation, as they too require "specialized legal skills" and can involve "complex organizations," such as "large companies"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14-16, 17 (D.D.C. 2008) (prevailing market rates for complex federal litigation should be determined by looking to "a diverse range of cases").  That the attorneys handling these cases asked the court to award the specified rates itself demonstrates that the rates were "'adequate to attract competent counsel, [while] not produc[ing] windfalls to attorneys.'"  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  As a consequence, the resulting analysis yields the "prevailing market rate[] in the relevant community" for complex litigation undertaken in federal courts in the District of Columbia.  *See Blum*, 465 U.S. at 895.

7.  From these 86 complex federal cases, the following information was recorded for 2013 and beyond: hourly rate, the calendar year the rate was charged, and the number of years the lawyer was out of law school when the rate was charged (or, if law school graduation year was unavailable, years since bar passage), as defined above.  If the graduation or bar passage year was not stated in a motion or its exhibits, then the lawyer's biography was researched on the internet.  Although preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year.  For this reason, the matrix was modeled using one rate for each calendar year.  On the occasions when a lawyer expressed an hourly rate as a range or indicated the rate had increased during the year, the midpoint of the two rates was recorded for that lawyer-year.

8.  The matrix of attorney rates is based on 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases.  The lawyer-year data points spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years.

9.  Paralegal/law clerk rates were also recorded.  The following titles in the fee motions were included in the paralegal/law clerk data: law clerk, legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk.  The paralegal/law clerk row is based on 108 paralegal-year data points from 42 unique cases.  They spanned from 2013 to 2019 and from $60 to $290.  (It is unclear how many unique persons are in the 108 data points because paralegals were not always identified by name.)

10. The matrix was created with separate regressions for the lawyer data and the paralegal data.  For the paralegal data, simple linear least-squares regression was used with the dependent variable hourly rate and the independent variable the year the rate was charged subtracted from 2013; years were

combined into one variable and subtracted from 2013 rather than modeled as separate indicator variables to constrain annual inflation to a constant, positive number. The resulting regression formula was rate = 129.8789 + 9.902107 * (year-2013). For the lawyer data, least-squares regression was used with the dependent variable hourly rate and independent variables the year the rate was charged and the number of years of experience of the lawyer when the rate was charged. The year the rate was charged was subtracted from 2013 and modeled linearly as with the paralegal data. The number of years out of law school (or since year of bar passage) was modeled with both linear and squared terms, as is common in labor economics to account for non-linear wage growth (e.g., faster growth earlier in one's career than at the end of one's career). *See, e.g.*, Jacob Mincer, *Schooling, Experience, and Earnings* (1974). The resulting regression formula was rate = 227.319 + 16.54492 * experience - 0.2216217 * experience ^ 2 + 27.97634 * (year-2013). Regressions were also run with log transformed rates and with a random-effect model (to account for several lawyers appearing more than once in the data), but both alternatives resulted in mostly lower rates than those reflected here; in order to minimize fee disputes, these models were therefore rejected in favor of the more generous untransformed, fixed-effect model. Rates from one case comprised 20% of the data; the regression was also run without that case, but the resulting rates were mostly lower and therefore rejected, again to minimize fee disputes.

11. The data collected for this matrix runs through 2020. To generate rates for 2021 and subsequent years, an inflation adjustment (rounded to the nearest whole dollar) was added. The United States Attorney's Office determined that, because courts and many parties have employed the legal services index of the Consumer Price Index to adjust attorney hourly rates for inflation, this matrix will do likewise. *E.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015); *Eley*, 793 F.3d at 101-02; *DL*, 924 F.3d at 589-90.

12. This matrix was researched and prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students.

13. This matrix and an alternative, preexisting matrix were extensively examined, and, based on that analysis, this matrix was the one selected for computation of the hourly rates for the attorneys' fees awarded in *J.T. v. District of Columbia*, Civ. A. No. 19-0989, 2023 WL 355940 (D.D.C. Jan. 23, 2023) (Howell, C.J.).